Good morning, everyone. The panel has before it four separate appeals. One of them is being submitted without argument on the briefs later today. That's Appeal No. 2007-3191, Alston v. Merit System Protection Board. On the argument calendar, we'll hear argument first in Appeal No. 2007-3111, Overton v. Office of Personnel Management. Mr. James, welcome back to the court. Good morning to you. Please proceed. Good morning and thank you, Your Honor. Please, the Court. The agreement reached by the parties in June of 2005 as regards to proceedings in the case is central to all concern. And what's the meaning of the two-letter word IF in that agreement? It's a condition. If the agency will afford the applicant a decision. Yes. And the correspondence… The basis of that agreement is that they're going to decide if they're going to present you with a decision. That isn't a commitment that they will, is it? It seems to me that the only logical conclusion, if an agency determines they're going to give us a decision… If they're going to give you a decision. That's right. That was my comment. If they decide they're going to give us a decision, they'll give us the decision. But, Mr. James, the regulation seems to allow them to reconsider the merits only if they first determine that the proffered new and material evidence actually is new and material. If they determine, on the other hand, that it's not new, or if new, not material, they seem to be precluded from reaching the merits. So in that light, I don't understand how you read the wording of the agreement to guarantee you a merits decision. I read the agreement, which, of course, I view as comprised of several documents. Just beginning with the judge's order and summary setting out the discussions the parties had had… I'm talking about the letter from the Interior Department. That seems to be the source of what you say is an agreement that wasn't properly carried out by the Interior Department. So we're looking at the wording of the letter, and I'm saying when you read the wording of the letter in light of the reg that allows reopening of the merits only if the proffered new evidence is determined, in fact, to be new and to be material. Their determination was, no, it's not new, it's not material, therefore we're precluded from reopening. So in light of the strictures of that regulation, I don't see how you can read the agreement as a guarantee on the merits. They would have to violate the regulation to guarantee a merits  Two comments, Your Honor, if I may. First, the letter itself, the June 23, 2005 letter, the one I believe we're talking about, says two things. The last sentence of the first material evidence. It goes on to say in the last sentence of the second paragraph that if additional materials aren't submitted, we're not going to review, we're not going to reopen, pardon me, Mr. Overton's case. What about the regulation? Well, and that was my second comment. That agreement reached in this case may well be the mutual mistake that leads to reinstatement of the OPM appeal. That is to say, the individuals involved, the Department of Interior and Mr. Overton, believed in June of 2005 that the kind of reopening that we're talking about could occur. Well, you say there's a mutual mistake. I mean, clearly your client was mistaken in his belief as to what was agreed to and what was not, but I don't see anything that suggests that there was a mistake on the government's part. The mistake on the government's part is, from my reading of it, was the following. Well, number one, the government agreed, as I understood what was agreed, to reopen and look at additional information. To consider the evidence, not to decide on the merits, to consider the evidence and then determine whether or not to reopen based on that evidence, which, as Chief Judge Michel points out, is the only path that would have been consistent with the regulations in the first place. The June 23 letter, found at page 43 of the appendix, amongst other places, clearly indicates that the Department of Interior, in June of 2005, believed they had the authority to reopen the case. Not reopen it conditioned upon new and additional evidence, but to reopen it. Now, that didn't— Wait, wait, wait. Let me interrupt. Sure, sure. Because you're leaping over a point. You're saying that they believed they had the authority to reopen the case, regardless of whether there's new and material evidence. I don't see anything in that letter that says that. Well, insofar as the Court's recent decision in Lutz suggests de novo review is appropriate, I mean, I would like to persuade you that what I thought they thought was what they thought at the time the June 05 agreement was entered into. If it wasn't, it wasn't. And I understand that. Well, I could be persuaded if you could show me something in the letter or anything else, but I don't see it. Well, as I said, we've got the judge's order that was the predicate to all of that, wherein he sets out the nature of the discussions between the parties, specifically referring to a decision on the merits in the case. Well, it says if the agency will afford the appellant a decision on the merits. And as Judge Rader pointed out, it said if the employing agency takes this action. It's all conditional. And I read that if to be satisfied by the June 23 correspondence on behalf of the petitioner. Back at the time of the first appeal, when the administrative judge announced that he would agree to your request to withdraw the appeal by dismissing it with prejudice, did you object to the with prejudice part of it? I did not. Because the second piece of that proposal by the judge was to take what was then the new appeal regarding the decision made by the Department of Interior and treat it as a petition for enforcement in the first case. Well, as I understand it, I just don't see how you can complain about finality when you acquiesced in a dismissal that was explicitly stated by the administrative judge to be with prejudice. That means never to be reopened again. But now you're saying let's reopen it. The two positions are totally inconsistent in my mind. How do you reconcile? Using OPM's standard is how I reconcile it. And I will say this. OPM's standard is not exactly what MSPB's standard. I apologize. The MSPB's standard is not exactly what the MSPB said it was. That is to say, the full board in its decision that brought us here said simply we're looking for new and material evidence, none found, therefore we're not going to reopen it. Their standard, though, based on their case law is new and material evidence or misinformation. Now, one reading of the facts in this case is there was misinformation in the form of what the agency could or would do. What did the agency letter say that was untrue, inaccurate, false, fraudulent, or anything of the kind? It seems to me that last sentence in the first paragraph of the June 23, 2005 letter is not what occurred. That's not the question. The question is what did they say to you that was misinformation, that was a false or inaccurate statement? That they would review Mr. Overton's record and consider any new material evidence submitted. I don't see how that qualifies as misinformation. You may have misinterpreted what was going to happen, but that doesn't mean that they misinformed you in the wording of their letter. With the background being that the parties and the administrative judge had been talking in terms of a review on the merits, that's what led to the perhaps incorrect understanding that what the agency would do would be two things, review Mr. Overton's record and consider any new material evidence. Why didn't you have the letter or other indicia of the underlying agreement that you thought you had entered into the record so that it would be eligible for a petition to enforce an agreement? I don't have an answer for that. In hindsight, I certainly wish I had. That's the normal practice. On the other hand, this was a set of discussions being run by the administrative judge with whom I find no fault. Don't misunderstand. But I perhaps naively assumed we were all on the same page as we went through that. It's really that simple. Do you want to save the rest of your reply time? I was just going to say, subject to questions, I'd like to reserve the time. Thank you. Thank you, Mr. James. Ms. Cohen? Ms. Cohen, are equities outside the proper zone of consideration on this appeal by this panel? Well, Your Honor, the standard of review for the MSPB's decision not to reopen a case is an abuse of discretion, a broad abuse of discretion. And the only sort of standard for their discretion is the equities, the desirability of finality versus a public interest in the correct result. So in that sense, the equities do count. Well, what about the fact that there was a total of 13 years of delay while three different submissions by Mr. James were unattended to by OPM and the Department of Interior? A total of 13 years he was waiting to get an answer to his claim. Part of that time was Mr. Overton's delay in filing a petition for reconsideration of the initial decision. The initial denial by OPM was in 1992, and he did not request a reconsideration of that decision until 1996. He never requested a reconsideration of that decision. That's simply what the Interior Department chose to do with it. He didn't ask for a reconsideration decision by OPM. He asked the Interior Department to adjudicate the claim. Well, because the regulations had changed, the initial decision had to be reconsidered by the agency rather than OPM. That was just the basis of the petition. I still don't understand whether the long serial delays that Mr. Overton suffered are things we're allowed to weigh in the balance on deciding whether there was an abuse of discretion by the board or whether your position is, no, you're not allowed to weigh those kinds of equities. That's all past history. That's not relevant anymore. In terms of the delay, that's not relevant to this case, we would argue. What I was talking about in terms of equity is whether, for some reason, the initial decision was incorrect and in the interest of justice, the MSPB should have reopened it. That was the equity I was talking about. In terms of the delay, that has no effect on whether or not there was in deciding a claim for retirement benefits on the merits. Isn't there some interest when someone asks for retirement benefits to say, yes, you get them, or no, you don't get them, and here's why you don't qualify for them, as opposed to not reaching the merits? There is some interest in that, except that Mr. Overton gave up that interest when he voluntarily withdrew his appeal. He could have had the merits of his retirement annuity claim heard, however, he voluntarily withdrew that based upon his misunderstanding of what the agreement might have been between the agency and himself. So he withdrew on the right to make that argument to have a claim on the merits of his retirement claim. Well, his assumption was he had been promised at long last, after more than a decade, a decision on the merits. That was the whole reason he dropped the appeal. He called the judge as soon as he got the letter, apparently in a great state of excitement. He said, in view of this letter, I'll withdraw the appeal. You know, you might think we should praise an attorney for promptly dropping an appeal that no longer seems necessary, and thereby relieving burden of the overburdened Merit System Protection Board. Instead, the government takes the position, well, he made a mistake, so too bad for him, too bad for the client, case closed. Well, that's true, because it was a unilateral mistake at best. As you can see from the letter and from the status order, it's clear that there never was a promise to actually reopen and conduct a merits-based review unless Mr. Overton submitted new and material evidence. Are we allowed to review whether it was new and material? Whether the evidence itself was new and material? Yes. I don't believe so, Your Honor. Why not? Because you don't have a de novo review over that portion of the case. Well, de novo or not, maybe it's a discretionary review, maybe it's for abuse of discretion. Your position seems to be we're not allowed to review at all the Interior Department's determination that the 88 pages was not new, not material, not even one page of it. Is that your position? Well, the issue is not whether that was new and material evidence. The issue is whether once they had decided that it was not new and material, whether they could then go ahead and conduct a merits-based review, which they could not, basically. No, I agree with you. If they properly determined it was not new and material, they had to stop, not allowed to reach the merits. If they wrongly determined that it was not new and material, then they should have reached the merits. And the question is, if they made a mistake, is that uncorrectable because we're not allowed to look at it in the government's view? The question here is whether they properly denied the reconsideration request, and that does not go specifically to whether the evidence was new and material. Maybe not, maybe so. So it can't be reviewed. Specifically, the evidence that was submitted is not an issue in this particular case. If there had been new and material evidence, would you have had an obligation to reopen? The agreement, as I see it, from the decision, the status conference order, page 67 of the index, says that the only agreement was simply that the employing agency would decide if the agency would afford the appellant a decision on the merits of his claim at certain periods of his employment. That's not responsive to the question. If it was new evidence, would you have had an obligation to reopen? Not necessarily, no, because the agreement was to decide if the agency would reopen, whether there was new and material evidence or not. What about the regulation? Doesn't the regulation require that if there is determined to be new and material evidence, that the case is to be reopened? The case certainly can be reopened if there is new and material evidence. Based on what? What the Interior Department feels like that day? On Mondays, we'll reopen when there's new evidence, but on Tuesdays, when there's new evidence, we won't reopen because we get to choose. If they had found there was new and material evidence... That's the premise. Assume that they did find there was new and material evidence. Are you saying they could nevertheless fail to reach the merits? In that case, they would reopen the case. Would have to reopen the case? They would reopen the case, I believe so. In other words, they're required to do that by the regulation. The regulation says that a case will not be opened unless an agency head determines that new and material evidence is available. So the regulation does not specifically state that. What's the necessary inference on the factual circumstance that they determined that the evidence is new and material? If they determine the evidence is new and material, then pursuant to the regulations, they can reopen the case. But they don't have to. You retain jurisdiction even in the face of a finding of new evidence, right? What would be the additional discretionary factor, whether that new evidence could have been discovered and brought forward earlier? Well, that's part of what the regulation states. It says new and material evidence is available that, despite due diligence, was not available before the decision was issued. So that does go into the consideration. If the evidence had been available, whether those specific documents or other documents or evidence that had the same information... So, in other words, there's some things that have to be determined beyond just finding that the evidence is new. It has to be determined that it was not readily discoverable before. Right. Was there such a determination here? There was a determination here that the evidence was, first of all, not new and not material, and to the extent that some of the documents... Whoa, whoa, whoa, wait a minute. Not so fast. My recollection is there was something like 88 pages submitted. Right. And the Interior Department determined that about half of those pages had been submitted before, so obviously not new. So forget about those 40-some pages. And then they determined that certain other pages, 16 or so, were already in his file, also not new. But when I do the math, that doesn't get me down to zero pages. That leaves some two dozen or so pages that they don't seem to find any fault with. Well, they say in their letter on page 72 of the joint appendix that the department has determined that the entire collection of documents provides no new and material information. So they do specify that of the 88 pages, 44 pages were documents tolerable and discoverable prior to the 1992 decision. And that's the point Judge Rader made. If it was available before, you can't call it new, you can't get reopening based on that. So far, so good. Okay. But what about the rest of the number of pages? Then 16 pages were documents already contained in the Office of Personnel Management and Administrative Records. Okay, let's assume they can be discounted too. And then what's the matter with the rest of them? The letter does not specify what's the matter with the rest of them specifically, but it does say the department has determined that the entire collection of documents provides no new and material information. So, therefore, they've determined that the whole collection of documents submitted were not new and material. And based upon the regulation, they could not then reopen a merits-based review because a merits-based review can only be made if there is new and material evidence that was not available prior to the decision that was issued. The other issue is that even if Mr. Overton thought the agreement was to actually conduct a merits-based review regardless of whether the evidence was new and material, that would be a unilateral mistake on his part and not a reason for the case to be reopened. Is it an excusable mistake or is it so incredibly stupid that the door should be shut forever against a merits determination? Well, it's clear from the documents, namely the status report of the MSPB administrative judge and the letters from the Department of the Interior, that there never was an agreement to conduct a merits-based review. I'm agreeing with that, but I'm trying to get you to focus on whether the misinterpretation was so gross as to be inexcusable justifying shutting the courthouse door on the lawyer and client. Well, because it was simply a mistake on his side. I agree that it was unilateral. I agree that it was a mistake. I'm asking you whether it was an excusable mistake or an inexcusable mistake. It was an inexcusable mistake. Because? Because it is clear from the correspondence, the discussions with the administrative judge, and from the regulation itself that it was not possible for the agency to conduct a merits-based review unless new and material evidence was submitted. Therefore, it would not be possible for the agreement to be that they would conduct a review regardless of what the newly submitted evidence showed. Therefore, there was no excuse for him to make this unilateral mistake. If you were the AJ, would you have dismissed this with prejudice or without prejudice? The AJ did what he was supposed to do in terms of analyzing a voluntarily withdrawn case. He made sure that the withdrawal was knowing. He made sure that... Why don't you answer my question instead of a different question? Your question is... If you were the AJ and you were going to dismiss because Mr. James comes to you and says, I have this letter, I'm satisfied, I want to drop my appeal, would you have thought the proper course was to dismiss without prejudice or with prejudice? The proper course for the AJ when someone comes and asks to voluntarily dismiss an appeal is to normally dismiss with prejudice. Why is that? Why do you say that? Because the individual is making a voluntary choice to... Of course it's voluntary. Nobody's suggesting that a gun was put at his head. But as to whether it's going to be with prejudice or without prejudice, why does the AJ have to decide it's with prejudice? Where does the law say that? The AJ has to decide that it's with prejudice because it's a withdrawal. Not all withdrawals are with prejudice. At least you haven't cited any regulation or case law saying a withdrawal must be presumed to be with prejudice, not allowed otherwise. In this case, however, the petitioner specifically agreed that he was no longer pursuing this claim on the merits and withdrew based upon that. If he was no longer wanting to pursue his claim on the merits, then it only makes sense to dismiss the case with prejudice. His intention was clearly to not pursue the merits of the claim, and therefore the administrative judge should have dismissed it. What if the agency didn't carry out the agreement? Well, if there had been an agreement entered into the record, then the administrative judge might have had some jurisdiction to enforce such an agreement. But since there was no settlement agreement entered into on the record, this was simply considered a voluntary withdrawal by one side of the appeal. Therefore, the administrative judge had no jurisdiction to enforce a settlement agreement that was never entered into onto the record. What he did instead was allow the MSPB to decide, the full board, to decide whether or not to reopen, and that was in their discretion. The full board declined to reopen in a mere footnote, giving zero reasoning. How is that reviewable by an appellate panel when it doesn't give any hint at all of what their reasons were? Your Honor, in this case, you can review, simply look to the record and see if their decision was an abuse of discretion based upon the record that they were looking at. There's no requirement that the full board give any analysis in terms of why they made the decision not to reopen. They simply have to make the decision, and you can review based upon the record and based upon their decision whether their decision was an abuse of discretion. But how is it reviewable if we don't know what they thought because they didn't say a word about it? You don't need to know what they thought. You need to simply look at the record. How can you review a lower tribunal if we don't know what the lower tribunal thought? The lower tribunal presumably reviewed the record at hand, the record that you have available to you, and made the decision not to reopen. The MSPB, again, has very broad discretion to make that decision. You can look at the record that they considered and see whether there was an abuse of that discretion. But it's not necessary for them to explain in detail the decision. Well, forget about detail. How about explaining at all? How about one sentence of explanation? Here there's zero explanation as I read their footnotes. Right. They simply said we didn't want to reopen. Conclusion. No reopening. No reasoning at all. No weighing of factors, discretionary factors. On the one hand there's this, on the other hand there's that, but this outweighs that, and here's why. Nothing. No hint. There are no factors that necessarily have to be weighed. As I said earlier, it's simply the interest of finality versus the interest of getting a correct decision. Those are the only broad factors that the MSPB needs to consider at all. And you can look at their decision and, again, look to the record that's in front of you and decide whether they abuse that discretion. All right. Thank you. Mr. James, you have about four and a half minutes left. Thank you, Your Honor. I'll be brief. Your question, Judge Michel, to the agency with regard to the court's ability to review new and material evidence, it seems to me mirrors the Lutz decision recently issued by the court insofar as you've got de novo review authority with regard to an agreement of the parties and whether it's contractual or not. And in that case, the court… But that all only comes into play if we believe there's some kind of ambiguity, right, in the agreement that you reached. If we don't find any ambiguity, if we find they simply said we're going to make a review and we may, we may not make a decision that opens, reopens your case, then we don't have to review that decision, do we? You voluntarily withdrew, the game's over. I suppose you've just defined the de novo review I would get at that point because you're making conclusions based on the record. Well, but I'm trying to figure out if there's any ambiguity at all that leads us to look behind the agreement that you reached with the agency. If there's no ambiguity, the agency was very clear with you on your obligations and theirs, then we don't need to redo their job. They do their job, we do ours. And I would simply repeat what I said in briefs earlier today in terms of the documents that reflect the entire set of conversations in June of 05. Yeah, but this isn't a three-way agreement. The administrative judge is not a party to forming the agreement. The agreement was formed on whatever the terms were between you and the Interior Department. No, I didn't mean to suggest otherwise, Your Honor. The administrative judge in some sense, and I mean no disrespect, was a scrivener. With regard to the agreement reached in consequence of a status conference that he called and included both OPM and the Department of Interior in. Well, I don't understand what you're saying. Are you saying there was a broader agreement orally arrived at in the conference call, different in scope from the letter from the Interior Department that led you to withdraw? No. It's the Interior letter. It's, in my view, what the judge wrote in his status order. Well, that can't amend the agreement that Interior Department made in its letter. He doesn't get to expand their offer. Their offer is their offer. It's up to them. That's absolutely right. And I read their offer, their letter, their response to the if question, to be. We understand that. A commitment. But if we don't find that commitment, then there's nothing really for us to review, is there? That's where we get. That's right. All right. And my point in mentioning the de novo review was simply to suggest that reaming was the remedy last time and it seems to be the appropriate remedy here. Thank you for your time. Any other questions? We think both counsel will take the appeal under advisement.